IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OSMAN YAHIR SANTOS-GUTIERREZ,
*Petitioner*,

v.

JEFFREY CRAWFORD, *et al.*,
*Respondents*.

1:26-cv-00838-MSN-WBP

## ORDER

Osman Yahir Santos-Gutierrez ("Petitioner") has filed a five-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act ("INA") (Count I), the Administrative Procedure Act (Count II), and his right to due process (Counts III & IV). Petitioner also asks this Court to order Respondents to produce all records related to his detention (Count V).

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. ECF 1 ¶ 22. He has sued Robert Guadian, the Field Office Director of ICE Enforcement and Removal Operations' Washington Field Office; the DHS Secretary[1]; Pamela Bondi, the Attorney General; and Todd M. Lyons, the Acting Director of ICE (collectively "Federal Respondents"). *Id.* at 1. He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center. *Id.*

---

[1]     The Petition names Kristi Noem, the prior DHS Secretary.

In response to the Court's Order of March 30, 2026 (ECF 2), Federal Respondents have confirmed that the factual and legal issues presented in the Petition do not differ in any material fashion from those presented in *Servellon Martinez*, 1:25-cv-1792 (E.D. Va.). ECF 5. Accordingly, the Court incorporates the filings from *Servellon Martinez* into this case and for the reasons that follow, the Court will grant the Petition as to Counts III and IV.[2]

## I.   BACKGROUND

Petitioner is a native and citizen of Honduras. ECF 1 ¶ 22. He is deaf, cannot read or write, and can only communicate through a personalized language of hand signals developed with his closest family members. *Id.* at ¶ 2; ECF 1-1. In 2024, Petitioner witnessed the murder of his friend by gang members who then threatened to kill him if they saw him again. *Id.* ¶ 51. He alleges that this threat prompted him to flee Honduras and enter the United States without inspection in August 2024. *Id.* After entering the United States, DHS stopped Petitioner, placed him in removal proceedings, and then released him on his own recognizance pursuant to section 236 of the INA, codified at 8 U.S.C. § 1226. ECF 1-4 at 2, 4.

After his release on August 18, 2024, Petitioner traveled to Maryland, where he resides with his uncle, who is a United States citizen. ECF 1 ¶ 53. On November 6, 2025, he was detained by ICE and transferred to the Farmville Detention Center where he has remained in custody since. *Id.* ¶ 54. Petitioner has since applied for asylum and withholding of removal and his application is still pending. *Id.* ¶ 55.

---

[2]   Because the Court grants the Petition as to Count III and IV, it need not address Petitioner's other claims. In particular, the Court notes that Petitioner seeks access to records of his detention to help Petitioner establish his "statutory and constitutional claims." ECF 1 ¶ 98. Because the Court grants Petitioner habeas relief on his due process claim, Petitioner's records request is moot.

On December 23, 2025, Petitioner's counsel requested a bond hearing before an Immigration Judge ("IJ"). *Id.* ¶ 56. An IJ held a bond hearing on January 13, 2026, but concluded that the IJ lacked jurisdiction over Petitioner's request pursuant to the Board of Immigration Appeals ("BIA")'s decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). ECF 1 ¶ 56.

## II.    ANALYSIS

The central question posed in the Petition is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under 8 U.S.C. § 1226(a). Petitioner contends that his detention should be governed by § 1226(a) and that his current detention without bond pursuant to § 1225(b)(2) violates his right to due process. In *Servellon Martinez*, Federal Respondents "recognize[d] that this Court and other jurists of this Court recently rejected Federal Respondents' arguments" to the contrary. ECF 5 at 1, No. 1:25-cv-1792 (E.D. Va. Oct. 23, 2025); *see also, e.g.*, *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025). Nevertheless, they raised these same arguments "to preserve them for appeal." ECF 5 at 1, No. 1:25-cv-1792 (E.D. Va. Oct. 23, 2025).

At bottom, Federal Respondents' argument is that anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply only to those who have been given legal status and subsequently placed into removal proceedings. *Id.* at 5–14. They therefore argue that because Petitioner is present in the United States but has not been legally "admitted," he should be considered an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). *Id.*

Federal Respondents' argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[3] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. *See, e.g.*, *Hasan v. Crawford*, No. 1:25-cv-1408, 2025 WL 2682255, at *8–9 (E.D. VA. Sept. 19, 2025); *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have [an] extremely limited (if any) application." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (footnote omitted). This Court has previously addressed several of these points in *Quispe-Ardiles*, 2025 WL 2783800, and adopts and incorporates that reasoning into this Order. *See also, e.g.*, *Flores Pineda v. Simon*, No. 1:25-cv-01616-AJT-WEF, 2025 WL 2980729, at *2 nn.2 & 3 (E.D. Va. Oct. 21, 2025) (providing additional explanation for why § 1225(b)(2) does not apply).

Because Petitioner has been present in the United States for almost two years, and because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), his detention is governed by § 1226(a). The Court also notes that, as in *Quispe-Ardiles*, 2025 WL 2783800, at *6, DHS previously concluded that Petitioner's detention should be governed by § 1226 when they released him on recognizance citing their authority to do so under § 1226. ECF 1-4. DHS's prior treatment

---

[3]     *See Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 & n.9 (E.D. Va. Sept. 29, 2025) (collecting cases).

of Petitioner thus directly contradicts their present position that he is an "arriving alien" and "applicant for admission" under § 1225(b)(2)(A).

Having determined that Petitioner's detention is governed by § 1226(a) and its implementing regulations, the Court concludes that Petitioner is entitled to a bond hearing before an IJ in which the IJ must determine whether he poses a danger to the community or a risk of flight. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless the IJ makes such a determination, Petitioner's continued detention is unlawful and, for many of the reasons stated in *Quispe-Ardiles*, 2025 WL 2783800, at *8–10, violates his right to due process.

### III.   CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that Petitioner be immediately released from custody, with all his personal property, pending his bond hearing before an immigration judge. Petitioner must live at a fixed address and provide that address to the Court and Federal Respondents within twenty-four (24) hours of the issuance of this Order. Petitioner must also appear at the bond hearing once Federal Respondents notify him of its date, time, and location; it is further

ORDERED that Federal Respondents must provide Petitioner with a standard bond hearing pursuant to 8 U.S.C. § 1226(a); it is further

ORDERED that Federal Respondents are ENJOINED from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2); it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless he has committed a new violation of any federal,

state, or local law, or has failed to attend any properly noticed immigration or court hearing, or pursuant to 8 U.S.C. § 1231(a)(2); and it is further

ORDERED that Federal Respondents shall file a status report on the status of Petitioner's bond hearing within three (3) days of the bond hearing. The status report shall detail when the bond hearing occurred, if the bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

April 1, 2026
Alexandria, Virginia